UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN S.,

           Plaintiff,

    v.                                        **DECISION AND ORDER**

                                                            21-CV-739S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.       Plaintiff Kathleen S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.       Plaintiff protectively filed her applications with the Social Security Administration on November 11, 2014. Plaintiff alleged disability beginning February 7, 2013, due to chronic obstructive pulmonary disease ("COPD"), emphysema, obesity, arthritis, and degenerative disc disease of the lumbar spine. Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On October 16, 2017, ALJ Sharon Seeley held a hearing at which Plaintiff appeared and testified (R.[2] at 22). Ms. Seeley before retiring issued a written decision on January 3, 2018, denying Plaintiff's applications for benefits (R. at 169). Plaintiff appealed to the Appeals Council and on October 11, 2019, the Appeals Council vacated and remanded the matter to the ALJ because the RFC did not account for Plaintiff's COPD and emphysema (R. at 187, 186).

4. Upon remand and reassignment, ALJ Mary Mattimore conducted a telephone hearing due to COVID-19 at which Plaintiff—represented by counsel—and Vocational Expert Frank Fazzolari appeared and testified. (R. at 22, 47-98.) At the time of the hearing, Plaintiff was 56 years old on her onset date with a high school education (R. at 178, 148, 37). She closely approached her retirement age on July 2, 2018, the established disability onset date by ALJ Mattimore (R. at 37). Plaintiff had experience as a customer service representative, home health aide, and automobile salesperson (R. at 36).

5. On remand, ALJ Mattimore considered the case *de novo* and, on September 1, 2020, issued a written decision denying Plaintiff's applications (R. at 22). ALJ Mattimore added restrictions on exposure to fumes, dust, and odors due to Plaintiff's respiratory conditions (R. at 32); Plaintiff's respiratory conditions, however, are no longer pertinent to the present case. After the Appeals Council denied Plaintiff's request to review ALJ Mattimore's decision, she filed the current action challenging the Commissioner's final decision.[3] (Docket No. 1.)

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's September 1, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

6.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 15.)  Plaintiff filed a response on May 13, 2022 (Docket No. 16), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion (Docket No. 9) is **granted**, and Defendant's Motion (Docket No. 15) is **denied**.

7.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

8.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

3

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

9.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

12. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of July 2, 2018. (R. at 25.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: COPD, emphysema, obesity, arthritis, and degenerative disc disease of the lumbar spine. Id. at 25. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

13. Next, the ALJ found that prior to July 2, 2018, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. Noting that Plaintiff uses a single cane when walking, Plaintiff could occasionally balance, stoop, and climb ramps or stairs, but could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. Plaintiff could

work in an environment that does not involve work at production rate pace or expose to such unprotected heights or moving machinery. She could have no concentrated exposure to fumes, odors, dusts, gases, or other pulmonary irritants (R. at 29-30).

14. Beginning on July 2, 2018, Plaintiff has an RFC to perform sedentary work, continuing to use a single cane when walking. Plaintiff can occasionally balance, stoop, and climb ramps or stairs, but never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. Plaintiff can work in an environment that does not involve work at production rate pace or expose to such unprotected heights or moving machinery. She can have no concentrated exposure to fumes, odors, dusts, gases, or other pulmonary irritants. Plaintiff can sit for less than two hours per day due to the combination of her impairments. She can stand/walk for less than two hours per day due to the combination of her impairments. (R. at 35.)

15. At Step Four, the ALJ found that from July 2, 2018, her RFC prevented Plaintiff from performing any past relevant work. (R. at 36.)

16. At Step Five, the ALJ found that Plaintiff approached retirement age on July 2, 2018 (R. at 37). From that date, the ALJ found that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 37.) Accordingly, the ALJ found that Plaintiff is not disabled from November 11, 2014, through the date last insured, March 31, 2017, but was disabled for supplemental security income from July 2, 2018. (R. at 38.)

17. Thus, Plaintiff seeks disability coverage from November 11, 2014, through March 31, 2017.

18.  Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ improperly rejected the opinion of her treating physician, Dr. Thomas White (R. at 677-79, 34; Docket No. 10, Pl. Memo. at 11-16).  She concludes that the RFC is not supported as to other evidence of record because it is based upon what she terms vague examining or non-examining source evidence.  (Docket No. 10, Pl. Memo. at 16-21.)  For the reasons that follow, this Court accepts Plaintiff's argument that the ALJ improperly rejected Dr. White's January 2019 opinion.

19.  According to the medical record, Dr. White treated Plaintiff from July 2015 for various conditions including Plaintiff's back pain.  In 2016, Plaintiff complained to Dr. White of her chronic back pain with decreased range of motion, tenderness, pain, and spasms in lumbar back (R. at 801, 802, 797, 835, 790, 694, 971, 980, 1006).  Plaintiff reported moderate pain (at level of 4 or 5 out of a scale of 10) (R. at 801, 790, 971, 983, 1006, 31).

20.  On January 9, 2017, Dr. White diagnosed Plaintiff with lumbar stenosis, osteoarthritis of the lumbar spine, and COPD (R. at 677, 176; see Docket No. 10, Pl. Memo. at 9).  Dr. White found that Plaintiff was limited to standing, walking, and sitting for less than two hours, can rarely lift 10 pounds, and never stoop, crouch or squat (R. at 678, 34; see Docket No. 10, Pl. Memo. at 9).

21.  The ALJ, however, found that Dr. White's opinion was not supported by the evidence (R. at 34).  While giving some weight to Dr. White's opinion as to Plaintiff's limitations, the ALJ did not give significant weight to that opinion because "it is unexplained and unsupported by and inconsistent with the objective medical evidence of record" (R. at 34; see id. R. at 176).  Citing the x-rays in the record (R. a 31, 34) while

reaching the same finding ALJ Seeley made in 2018 (R. at 176-77), ALJ Mattimore noted that Plaintiff had mild degenerative disease of the lumbar spine, with no findings suggesting radiculopathy, any pathological condition of the nerve roots, Merriam Webster's Medical Desk Dictionary, at 599 (1993) (R. at 34). The ALJ next observes that Dr. White's July 2, 2018, examination (see R. at 1091) do not show extreme limitations suggested by Dr. White (R. at 34). The ALJ concludes that Plaintiff's extreme limitations also are inconsistent with the conservative treatment history with medication only (R. at 34, 32).

22. Plaintiff argues that as her treating physician, Dr. White's opinion deserves controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (Docket No. 10, Pl. Memo. at 11). The ALJ had to defer to the treating physician's opinion and must articulate "good reasons" to rebut the presumption of controlling deference conferring on the treating physician's opinion (id. at 12), Colgan v. Kijakazi, 22 F.4th 353, 360 (2d Cir. 2022).

23. If controlling weight is not given to the opinion of the treating physician, the ALJ must determine the weight given to the treating physician's opinion, applying the factors found in Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008): the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinion; the consistency of the opinion with the rest of the medical record; and whether the physician is a specialist, Estrella, supra, 925 F.3d at 95-96; Colgan, supra, 22 F.4th at 360 n.3.

24. Defendant responds (Docket No. 15, Def. Memo. at 16-18, 18-22) that the ALJ correctly weighed the opinions of Dr. White and consultative examiner Dr. Hongbaio Liu (R. 662-65, 34, 31). Defendant states that the ALJ could rely upon Dr. Liu's finding (R. at 663) that Plaintiff did not need a walker (id. at 16, 18) despite Dr. White's prescription of a walker (R. at 82, 512-13; Docket No. 15, Def. Memo. at 18), a finding Plaintiff criticized as being vague and non-specific (Docket No. 10, Pl. Memo. at 17-19).

25. Defendant further argues that Plaintiff seeks this Court reevaluate the record evidence which is not appropriate for this Court (Docket No. 15, Def. Memo. at 1-2), Biestek v. Berryhill, 587 U.S. ___, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019).

26. In her reply, Plaintiff argues that Biestek, supra, 139 S.Ct. 1148, is not applicable here because the ALJ erred in requiring evidence of radiculopathy when Dr. White's opinion was not based on radiculopathy and erred in not considering Plaintiff's fear of surgery or otherwise aggressive treatment (Docket No. 16, Pl. Reply Memo. at 1-3; see also Docket No. 10, Pl. Memo. at 15; R. at 33).

27. Plaintiff seeks coverage (for supplemental security income) from November 2014 through March 31, 2017, where the ALJ found that Plaintiff became disabled as of July 2, 2018. The ALJ considered a second medical source statement from Dr. White, on August 13, 2020 (R. at 1092), that supported the post-July 2018 disability finding (R. at 35). While Dr. White's later findings as to sitting and standing, Plaintiff's ability to lift weight, twist, stoop, and crouch are the same reported in January 2017 (R. at 1093-94, 678, 35), the ALJ found the August 2020 opinion was more consistent with Plaintiff's later need for additional assistance at home for chores (R. at 35-36). The sole difference from the determination of disability as of July 2018 is the

additional assistance Plaintiff needed at home and no other medical evidence since July 2018.

28.     Defendant has not shown that the ALJ relied upon substantial medical evidence in the case record that was inconsistent with Dr. White's January 2017 opinion. The ALJ did not discuss many of the Burgess factors in giving that opinion less than controlling weight.  Dr. White treated Plaintiff since 2015.  The sole objection the ALJ raises is the consistency of Dr. White's 2017 opinion with the medical evidence.

29.     Rather, the ALJ rests the disability finding upon when Plaintiff started to receive assistance with her chores on or after July 2018.

30.     Dr. Liu's consultative examination on January 28, 2015, stated that Plaintiff did not medically require a walker, although she used it for assistance (R. at 663, 34) and Dr. White's July 2016 prescription for a walker (R. at 802).  Dr. Liu then concluded that Plaintiff has moderate limitation for prolonged walking, bending, and kneeling (R. at 665, 34).  The ALJ found Dr. Liu's opinion of moderate limitations were "more consistent with the modest objective findings and conservative treatment history" (R. at 34).

31.     The medical evidence here, however, was the same for Drs. White and Liu. Both found moderate limitations for prolonged walking, the finding Dr. White made in January 2017.

32.     While this Court defers to the ALJ's weighing of evidence in the record, see Biestek, supra, 139 S.Ct. at 1157 (cf. Docket No. 15, Def. Memo. at 21), this Court must review the administrative record to see if it contains sufficient evidence to support the ALJ's factual findings, id. at 1154.  This Court is not engaging in weighing (or reweighing)

the medical evidence (but cf. id.).  Instead, this Court determines the sufficiency of the evidence for the weight given to Dr. White's opinion.

33.     The ALJ's decision in giving diminished weight to that opinion prior to July 2018 is only based upon the daily activities Plaintiff could perform and the assistance she later required.  This is insufficient to deny controlling weight to the treating source's opinion.

34.     Thus, Plaintiff's Motion for Judgment (Docket No. 9) is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      February 9, 2023
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge